[No. 40245-5-I.  Division One.  December 7, 1998.]

THE CITY OF SEATAC, *Respondent*, v. JAMES T. CASSAN, ET AL., *Appellants*.

*Scott M. Ellerby* of *Mills Meyers Swartling*, for appellants.

*Robert L. McAdams, City Attorney*; and *Dale C. Barr* of *Sklar & Marcott, P.S.*, for respondent.

BAKER, J. — James and Dorris Cassan (Cassan) appeal their judgment in an eminent domain action brought by the City of SeaTac (SeaTac). They challenge the trial court's rulings on their entitlement to attorney and expert fees under RCW 8.25.070, damage to the remainder of their property, property taxes, and prejudgment interest.

We hold that (1) Cassan is not entitled to an award of attorney and expert witness fees because the award did not exceed the settlement offer by 10 percent,[1] (2) the trial court did not err in calculating the prejudgment interest award, and (3) Cassan is not entitled to reimbursement for property taxes because he did not timely raise the issue at trial. Finally, the trial court properly exercised its discretion when it denied Cassan's claim of damages for the cost of moving the building located on the property remainder. We therefore affirm.

## FACTS

SeaTac offered to purchase 1,706 of Cassan's 15,915 square foot parcel. The property to be acquired was used for 8 to 12 parking spaces as part of a car sales lot. After

[1] RCW 8.25.070.

unsuccessful negotiations, SeaTac filed a Petition in Eminent Domain to determine just compensation. On September 29, 1995, SeaTac and Cassan signed and filed a Stipulated Order For Immediate Possession and Use. SeaTac was granted immediate possession and use of the property and $45,350 (less $5 fee) was put into the registry of the court for Cassan as a formal offer.

After a bench trial, the court awarded a just compensation figure of $43,503 for the value of the property taken. In addition, the court awarded $3,902 for the value of the temporary nine month construction easement occupied by SeaTac, $1,800 for the costs associated with resupplying electricity to certain relocated light standards, prejudgment interest, and statutory costs and fees. The court denied Cassan's claim of damages for the cost of relocating a building on the property, denied Cassan's posttrial claim for reimbursement of prepaid property taxes, and denied attorney and expert witness fees claimed under RCW 8.25-.070.

## DISCUSSION
## RCW 8.25.070

Cassan argues that he is entitled to reasonable attorney and expert witness fees under RCW 8.25.070. In relevant part, the statute provides as follows:

(1) . . . if a trial is held for the fixing of the amount of compensation to be awarded to the owner or party having an interest in the property being condemned, the court shall award the condemnee reasonable attorney's fees and reasonable expert witness fees in the event of any of the following:

. . . .

(b) If the judgment awarded as a result of the trial exceeds by ten percent or more the highest written offer in settlement submitted to those condemnees appearing in the action by condemnor in effect thirty days before the trial.

First, Cassan asserts that SeaTac failed to serve a writ-

ten offer at least 30 days before trial. We reject that argument, because Cassan admits receiving SeaTac's settlement offer letter prior to the commencement of this action. Furthermore, the parties stipulated to an offer as part of the stipulated order for immediate use and possession.

Next, Cassan argues that the total amount of the judgment entered below exceeds SeaTac's written offer by more than 10 percent, thus triggering an award under the statute. We disagree.

Just compensation is the difference between the fair market value of the entire property and the fair market value of the remainder. It includes the value of the property taken and damages, if any, caused to the remainder by reason of the taking, offset by the amount of special benefits, if any, accruing to the remainder of the property as a result of the project which necessitated the condemnation action.[2]

The just compensation awarded below did not exceed SeaTac's offer by 10 percent. Cassan argues, however, that the total amount of the judgment below did exceed the offer by the necessary 10 percent, because it included prejudgment interest, statutory attorney fees of $125, a statutory appraiser's fee of $200, and deposition costs of $422. The trial court included the prejudgment interest amount when it calculated the judgment in order to determine Cassan's entitlement to fees under the 10 percent rule, but it excluded the other cost items.

SeaTac argues persuasively that the trial court should not have included the prejudgment interest amount in its calculation. Prejudgment interest is based upon the time period between the judgment and the date when the condemnor either takes possession or becomes entitled to possession of the property. The date of the judgment is subject to many variables, and may be delayed, as here, at the request of the property owner. We need not decide whether the trial court erred on this point, because the

[2]WPI 150.07.

inclusion of prejudgment interest alone in the court's calculation did not bring the amount of the judgment to the 10 percent threshold level. And we rule that the trial court did not err by excluding the other cost items. None of these items bear any relationship to the just compensation award. Nothing in the statutory scheme providing for cost and fee reimbursements in eminent domain proceedings leads us to conclude that the Legislature intended that such items be included when calculating the 10 percent threshold. Prior court decisions have ruled that the purpose of the 10 percent rule is to ensure that both parties in such proceedings make a good faith attempt at pretrial settlement.[3] Including such cost items as these, extraneous to the just compensation negotiations involved in settlement efforts, does nothing to further that legislative purpose.

## Possession

Cassan argues that possession of the condemned property by SeaTac occurred earlier than the date of the stipulated possession and use order. He argues that if prejudgment interest is added to the just compensation figure for the full period of occupation by SeaTac before entry of judgment, his judgment will exceed the 10 percent threshold. However, in unchallenged findings, the trial court found that the taking date was the date of the order of immediate possession and use. A use and possession order provides a presumed possession date upon which interest is based.[4] This presumption may be rebutted, but it is the owner's burden of proof to do so. Here, Cassan failed to obtain a finding of an earlier possession date. The absence of a finding on an issue is construed against the party having the burden of proof on that issue.[5] Cassan did not meet his burden and the trial court specifically found the stipulated date to be the date of the taking. There is substantial

[3]*State v. Olson*, 31 Wn. App. 403, 407, 642 P.2d 410, *review denied*, 97 Wn.2d 1023 (1982); *Port of Seattle v. Rio*, 16 Wn. App. 718, 720-21, 559 P.2d 18 (1977).

[4]RCW 8.25.070(3), 8.04.092.

[5]*Xieng v. Peoples Nat'l Bank*, 120 Wn.2d 512, 526, 844 P.2d 389 (1993).

evidence to support the court's finding that the taking (and therefore possession) occurred on the stipulated date.

Cassan attempts to establish an earlier possession date on appeal, utilizing photograph exhibits admitted at trial; however, this court does not make findings of fact. We hold that the trial court's determination is based on substantial evidence and Cassan did not meet his burden as to an earlier possession date.

## Property Taxes

■ Contrary to SeaTac's argument that reimbursement of property taxes is exclusively within the condemnor's discretion under RCW 8.26, we hold that a condemnee landowner may raise the issue of reimbursement for property taxes at trial as part of the just compensation determination. Cassan failed to do so until posttrial proceedings, thus depriving SeaTac of any opportunity for cross-examination and rebuttal evidence. The posttrial motion and affidavit filed by Cassan established that taxes had been paid, and attempted to allocate the taxes between the property taken and the remainder. But as SeaTac noted in oral argument, the taxes might have been paid by Cassan's tenant, and a legal right to reimbursement was not clearly established. We find no error in the trial court's ruling.

## Moving Costs

Cassan argues that to continue using the remainder of the property as a car sales lot, he will need to relocate the building on the property to replace the 8 to 12 parking spaces lost by the taking. He presented evidence that the cost of moving the building would be $62,000, and he claims the trial court erred by refusing to add that sum to the just compensation award.

■ Before the taking, the building was located 70 feet from SeaTac's right-of-way. After the taking, it was located 62 feet away. The trial court relied upon the higher per square foot value of the property, testified to by Cassan's

appraiser, but in doing so determined that that figure "includes, inter alia, commercial value and aesthetic value." The court specifically declined to allow the claimed cost of relocating the car sales office. The court was clearly well within its discretion, and we find no error.

Affirmed.

GROSSE and APPELWICK, JJ., concur.